UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| KACY EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  1:19 CV 231 CDP |
| | ) | |
| ANDREW M. SAUL, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Kacy Evans brings this action under 42 U.S.C. § 405 seeking

judicial review of the Commissioner's final decision denying her claim for

disability insurance benefits (DIB) under Title II of the Social Security Act, 42

U.S.C. §§ 401, *et seq.*  Because the Commissioner's final decision is supported by

substantial evidence on the record as a whole, I will affirm the decision.

### Procedural History

On January 26, 2017, the Social Security Administration denied Evans' June

2016 application for DIB in which she claimed she became disabled on May 5,

2016, because of hidradenitis suppurativa, fibromyalgia, degenerative disc disease,

osteoarthritis, urticaria, Schmorl's node, generalized anxiety disorder, muscle

spasm, back pain, and depression.[1]  A hearing was held before an administrative law judge (ALJ) on August 2, 2018, at which Evans and a vocational expert testified.  On January 18, 2019, the ALJ denied Evans' claim for benefits, finding that vocational expert testimony supported a conclusion that Evans could perform work that exists in significant numbers in the national economy.  On October 25, 2019, the Appeals Council denied Evans' request for review of the ALJ's decision. The ALJ's decision is thus the final decision of the Commissioner.  42 U.S.C. § 405(g).

In this action for judicial review, Evans claims that the ALJ's decision is not supported by substantial evidence on the record as a whole.  Specifically, Evans argues that the ALJ failed to provide good reasons to discount the opinion of Evans' treating physician and that without this opinion evidence the record lacked sufficient medical evidence from which the ALJ could determine Evans' residual functional capacity (RFC).  Evans asks that I reverse the ALJ's decision and award benefits or, alternatively, remand for further consideration.

For the reasons that follow, I will affirm the ALJ's decision.

## Medical Records and Other Evidence Before the ALJ

With respect to medical records and other evidence of record, I adopt Evans'

---

[1] Evans filed an application for DIB in June 2014, which was denied by an ALJ on May 4, 2016, and not pursued further.  Evans makes no claim in this action that the Commissioner should have reopened this earlier application.

recitation of facts set forth in her Statement of Material Facts (ECF 9-1) as
admitted and clarified by the Commissioner (ECF 12-1).  I also adopt the
Commissioner's Statement of Additional Facts (ECF 12-2), which Evans does not
dispute (ECF 13-1).  These statements provide a fair and accurate description of
the relevant record before the Court.  Additional specific facts are discussed as
needed to address the parties' arguments.

## Discussion

A.    <u>Legal Standard</u>

To be eligible for DIB under the Social Security Act, Evans must prove that
she is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker
v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).  The
Social Security Act defines disability as the inability "to engage in any substantial
gainful activity by reason of any medically determinable physical or mental
impairment which can be expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than twelve months."  42 U.S.C.
§ 423(d)(1)(A).  An individual will be declared disabled "only if [her] physical or
mental impairment or impairments are of such severity that [she] is not only unable
to do [her] previous work but cannot, considering [her] age, education, and work
experience, engage in any other kind of substantial gainful work which exists in
the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The first three steps involve a determination as to whether the claimant is currently engaged in substantial gainful activity; whether she has a severe impairment; and whether her severe impairment(s) meets or medically equals the severity of a listed impairment.  At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform her past relevant work.  *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process).  If the claimant is unable to perform her past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy.  If so, the claimant is found not disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis.  If she meets this burden and shows that she is unable to perform her past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with her impairments and vocational

- 4 -

factors such as age, education, and work experience.  *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).  If the claimant has nonexertional limitations, the Commissioner may satisfy his burden at Step 5 through the testimony of a vocational expert.  *King v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009).

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Jones*, 619 F.3d at 968. Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).  If, after reviewing the entire record, it is possible to draw two inconsistent conclusions and the Commissioner has adopted one of those conclusions, I must affirm the Commissioner's decision.  *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012).  I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

B.      The ALJ's Decision

The ALJ found that Evans met the insured status requirements of the Social

Security Act through December 31, 2017, and had not engaged in substantial

gainful activity since May 5, 2016, the alleged onset date of disability.  The ALJ

found that Evans' degenerative disc disease of the thoracic and lumbar spine,

anxiety, mild osteoarthritis of the left knee, and mild bilateral dystonia and tremor

of the hands were severe impairments but that they did not meet or medically equal

a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 12-14.)[2]

The ALJ found that Evans had the RFC to perform light work but that she could

not

> climb ladders, ropes, or scaffolds, and can only occasionally climb
> ramps and stairs.  She can only occasionally balance, stoop, kneel,
> crouch and crawl, and only occasionally reach overhead, push, or pull
> bilaterally.  She can engage in frequent handling and fingering, and is
> limited to performing simple routine tasks but not in a fast paced
> environment such as an assembly line.  She is limited to work that
> requires only occasional changes in the work setting, and can have
> only occasional interaction with coworkers and public.

(Tr. 16.)  The ALJ determined that Evans' RFC precluded her from performing her

past relevant work as a mixing machine operator.  (Tr. 20.)

Considering Evans' RFC, age, work experience, and education, the ALJ

---

[2] The ALJ found that Evans' chronic urticaria (hives), obesity, insomnia, hypertension, and
tobacco use disorder were not severe impairments and, further, that Evans' claimed fibromyalgia
was not a medically determinable impairment.  (Tr. 13-14.)  Evans does not challenge these
determinations.

found vocational expert testimony to support a conclusion that Evans could

perform work as it exists in significant numbers in the national economy, and

specifically, as an agricultural produce sorter, bakery racker, or inspector packer.

The ALJ thus found that Evans was not under a disability from May 5, 2016,

through the date of the decision.  (Tr. 20-21.)

C.      RFC Determination

        Evans challenges the manner and method by which the ALJ determined her

RFC, claiming that the ALJ failed to give good reasons to discount the opinion of

her treating physician and that without this opinion evidence there was insufficient

medical evidence to support the RFC determination.

        A claimant's RFC is the most she can do despite her physical or mental

limitations.  *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  The ALJ

bears the primary responsibility for assessing a claimant's RFC based on all

relevant, credible evidence in the record, including medical records, the

observations of treating physicians and others, and the claimant's own description

of her symptoms and limitations.  *Goff*, 421 F.3d at 793; *Eichelberger v. Barnhart*,

390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1545(a).  Because a claimant's

RFC is a medical question, the ALJ is "required to consider at least some

supporting evidence from a [medical professional]" and "should obtain medical

evidence that addresses the claimant's ability to function in the workplace."

*Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (internal quotation marks and citation omitted).  *See also Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (ALJ's RFC assessment must be supported by some medical evidence of claimant's ability to function in the workplace).  "An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand." *Frederick v. Berryhill*, 247 F. Supp. 3d 1014, 1021 (E.D. Mo. 2017) (citing *Hutsell*, 259 F.3d at 712).  The burden to prove the claimant's RFC rests with the claimant, however, and not the Commissioner.  *Pearsall*, 274 F.3d at 1217.

    1.   *Opinion Evidence*

In her evaluation of the medical evidence, the ALJ considered a Medical Source Statement (MSS) completed by Evans' treating neurologist, Dr. James LaGuardia, and accorded it little weight, reasoning that the opinions expressed were not consistent with Dr. LaGuardia's own treatment notes as well as with other objective medical evidence of record.  The ALJ also found that Dr. LaGuardia's opinions appeared to be based on Evans' subjective complaints rather than on objective medical evidence obtained during the course of his treating her.  (Tr. 19-20.)  Evans contends that these reasons to discount Dr. LaGuardia's MSS are not supported by substantial evidence on the record as a whole.  For the following reasons, the ALJ did not err.

Evans first saw Dr. LaGuardia on October 19, 2016, for her complaint of hand tremors.  Although Evans reported that she had experienced such tremors for years, the medical evidence shows that she first complained of tremors on September 1, 2016, to Patrick Hammond, a physician's assistant at Regional Brain & Spine.  Regardless, during her visit with Dr. LaGuardia on October 19, Evans described her hand tremors as mild and intermittent.  Physical examination showed mild, high-frequency, low-amplitude tremor of the hands bilaterally, with normal sensory exam and normal fine motor skills.  Dr. LaGuardia noted that a recent MRI of the brain was normal.  Upon conclusion of the exam, Dr. LaGuardia reported that Evans' description of tremors was "unusual" and that exam "show[ed] only minimal" tremor of the hands.  He diagnosed Evans with dystonic tremor, ordered laboratory testing, and prescribed baclofen.  (Tr. 673.)

During this examination, Dr. LaGuardia also noted Evans' reports of muscle aches, spasm, neck and back pain, and burning dysesthesias of the feet and hands, as well as her complaints of limited activity because of pain.  Evans reported having no difficulty with mobility or getting around.  Examination with regard to these complaints showed sway with Romberg test,[3] but neurological testing was otherwise normal, including testing of coordination, sensation, and reflexes. Musculoskeletal examination was also normal.  (Tr. 673.)  Dr. LaGuardia did not

---

[3] Romberg Sign: "when a patient, standing with feet approximated becomes unsteady or much more unstable with eyes closed."  Stedman's Medical Dictionary 1771 (28th ed. 2006).

assign any diagnosis regarding these other complaints.

Evans followed up with Dr. LaGuardia on November 16 and continued to describe her tremors as mild and intermittent.  She reported that the condition seemed to have improved with her medication regimen, and Dr. LaGuardia noted that laboratory testing yielded essentially normal results.  (Tr. 512.)  He continued to describe Evans' hand tremors as minimal.  Regarding Evans' other complaints of muscle aches, back and neck pain, and dysesthesias, Dr. LaGuardia noted that recent MRIs showed minor degenerative disc disease of the cervical spine and mild spondylotic changes of the thoracic and lumbar spine.[4]  Further, musculoskeletal exam continued to be normal and, other than mild hand tremor and sway with Romberg testing, neurological exam was normal as well.  Dr. LaGuardia continued to diagnose only dystonic tremor.  Because baclofen, while effective, caused Evans to lose her sense of taste, Dr. LaGuardia determined to treat Evans with methocarbamol.  (Tr. 665-68.)

On February 1, 2017, Evans reported to Dr. LaGuardia that the hand tremors continued to improve.  There was no change in Evans' physical exam, and Dr. LaGuardia continued to describe the tremors as mild/minimal.  He adjusted Evans' medication in response to Evans' complaints of daytime sedation.  Dr. LaGuardia diagnosed Evans with dystonic tremor and excessive daytime sleepiness.  (Tr. 660-

---

[4] In her written decision, the ALJ erroneously stated that there was no evidence showing that Dr. LaGuardia reviewed these MRI studies.  (Tr. 20.)

64.)

On October 19, 2017, Evans reported to Dr. LaGuardia that her tremors were somewhat better.  (Tr. 676.)  Examination showed that Evans' fine motor skills were affected by tremors and that her hands and feet had diminished sensation. Evans' gait was normal, but she failed tandem walk.  Tenderness was noted about the cervical, thoracic, and lumbar spine, and range of motion about the neck was stiff.  Dr. LaGuardia continued in his diagnosis of minimal dystonic tremors. Flexeril was prescribed.  (Tr. 679-80.)

Evans last visited Dr. LaGuardia on February 22, 2018.  She reported that Flexeril was not that effective and that her hand tremors were mild to moderate. Examination continued to show that Evans' fine motor skills were affected by tremors and that both hands and feet had diminished sensation.  Evans' gait was normal.  Dr. LaGuardia continued in his diagnosis of minimal dystonic tremors. Skelaxin was prescribed.  (Tr. 682-83.)

In his MSS completed July 25, 2018, Dr. LaGuardia listed Evans' diagnoses as dystonic tremor and fibromyalgia[5] with symptoms of neck and low back pain, tremors, and nausea.  Dr. LaGuardia opined that with these impairments, Evans could never lift or carry twenty pounds and could rarely lift or carry ten pounds. He opined that Evans could rarely twist, stoop, crouch, crawl, and climb; and that,

---

[5] As noted earlier, Evans does not challenge the ALJ's finding that her claimed fibromyalgia was not a medically determinable impairment.

because of her tremors, Evans could rarely handle and only occasionally reach, finger, and feel.  He opined that Evans could sit no longer than twenty minutes at one time, and for a total of only two hours in an eight-hour workday; and, further, that she could stand no longer than twenty minutes at one time, and for a total of less than two hours in an eight-hour workday.  Dr. LaGuardia opined that Evans would need to take a thirty-minute unscheduled work break approximately every thirty minutes throughout the workday and would need to elevate her legs for four hours of an eight-hour workday.  Finally, Dr. LaGuardia opined that Evans was incapable of low stress work, would be off task twenty-five percent of the workday, and would miss work or leave early from work at least four days each month because of her impairments.  (Tr.  687-88.)  The ALJ accorded little weight to this MSS for the reasons stated above.

Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairment(s), including her symptoms, diagnoses, and prognoses; what she can still do despite her impairments; and her physical and mental restrictions.  20 C.F.R. § 404.1527(a)(1) (2017).[6]  The Regulations require that more weight be given to the opinions of treating sources than other sources.  20 C.F.R. § 404.1527(c)(2).  A treating

---

[6] In March 2017, the Social Security Administration amended its regulations governing the evaluation of medical evidence.  For evaluation of medical opinion evidence, the new rules apply to claims filed on or after March 27, 2017.  *See* 20 C.F.R. § 404.1520c.  Because the claim under review here was filed before March 27, 2017, I apply the rules set out in 20 C.F.R. § 404.1527.

source's assessment of the nature and severity of a claimant's impairments should

be given controlling weight if the opinion is well supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent

with other substantial evidence in the record.  20 C.F.R. § 404.1527(c)(2); *see also*

*Forehand v. Barnhart*, 364 F.3d 984, 986 (8th Cir. 2004).  This is so because a

treating source has the best opportunity to observe and evaluate a claimant's

condition,

> since these sources are likely to be the medical professionals most
> able to provide a detailed, longitudinal picture of [a claimant's]
> medical impairment(s) and may bring a unique perspective to the
> medical evidence that cannot be obtained from the objective medical
> findings alone or from reports of individual examinations, such as
> consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2).

When a treating source's opinion is not given controlling weight, the

Commissioner must look to various factors in determining what weight to accord

that and any other medical opinion of record, including the length of the treatment

relationship and the frequency of examination, the nature and extent of the

treatment relationship, whether the source provides support for their findings,

whether other evidence in the record is consistent with the source's findings, and

the source's area of specialty.  20 C.F.R. § 404.1527(c).  Inconsistency with other

substantial evidence alone is a sufficient basis upon which an ALJ may discount a

treating physician's opinion.  *Goff*, 421 F.3d at 790-91.  The Commissioner "will

always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion."  20 C.F.R. § 404.1527(c)(2).

The ALJ here did not err in finding that the limitations set out in Dr. LaGuardia's MSS were inconsistent with his own treatment notes.  Indeed, none of Dr. LaGuardia's treatment notes contain any observations or findings consistent with the extreme limitations contained in his July 2018 MSS.  To the extent Dr. LaGuardia opined that Evans' tremors caused significant limitations of the upper extremities, his treatment notes show that throughout his seventeen-month history of treating Evans, he consistently observed that her hand tremors were minimal. Although Dr. LaGuardia noted in October 2017 and February 2018 that Evans' fine motor skills were affected by tremor, his notes are silent as to the extent of any limitation and he continued to assess the tremors as minimal.  Evans herself described them as mild.  *See Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008) (diagnosis tempered by the words "mild" or "minimal").

Likewise, Dr. LaGuardia's treatment notes do not support the extreme postural limitations or limitations in standing and sitting.  During his treatment of Evans, Dr. LaGuardia noted that MRIs of the spine showed, at most, only mild or minor conditions.  *See Steed*, 524 F.3d at 875.  Musculoskeletal examinations were essentially normal except for some recent tenderness about the spine and stiffness about the neck.  Although Dr. LaGuardia reported in the MSS that Evans had

limited range of motion of her arms and legs, there is no indication of any such limited motion in his notes nor any indication that he tested for such limitations. Further, other than sway with Romberg test and one episode of failure to tandem walk, Evans' gait was normal.  Coordination and reflexes were normal as well.  An ALJ does not err when she discounts a treating physician's medical opinion where the opined limitations stand alone and were never mentioned in the physician's numerous records of treatment. *Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014). *See also Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (ALJ may discount treating provider's opinion when it is inconsistent with provider's own treatment notes).

Nor does other medical evidence of record support the extreme limitations expressed in Dr. LaGuardia's MSS.  MRIs taken of Evans' thoracic and lumbar spine in May 2016 and of her cervical spine in September 2016 showed mild or low-grade conditions and were considered normal in many respects.  An MRI of the thoracic spine in September 2017 yielded results similar to the 2016 study. Objective clinical testing by Evans' treating health care providers at Regional Brain & Spine, namely PA Hammond and Dr. Kyle Colle, showed that through October 2016, Evans exhibited normal gait and station; full muscle strength in all extremities; normal muscle bulk and tone; no spasm; negative straight leg raising; normal range of motion about the cervical, thoracic, and lumbar spine except for

some limitation in flexion in September 2016; full motor strength in all muscle

groups, including wrists, fingers, and grip; and intact sensation and reflexes (Tr.

494, 502, 509-10).  Dr. Gladys Kamanga-Sollo, a physician in Regional's

physiatry clinic, examined Evans in December 2016 and reported that her regular

gait and heel-to-toe gait were normal and, further, that she had full motor strength

in all of the major muscle groups of the upper and lower extremities, normal range

of motion about the spine, no focal tenderness or spasm, intact sensation, and

negative straight leg raising.  (Tr. 552-53.)  Other clinical examinations throughout

2017 showed normal sensation and reflexes; normal gait; normal straight leg

raising; no focal neurological deficits; and normal muscle strength, muscle tone,

and coordination.  (Tr. 565, 721, 727.)  X-rays of the cervical spine taken in

February 2018 were normal.  (Tr. 602.)  Evans exhibited normal range of motion

and strength in April 2018, as well as normal sensation, coordination, and gait.

(Tr. 534, 620, 624.)  An ultrasound of the right leg in June 2018 yielded normal

results, and an x-ray of the left knee in June 2018 showed mild osteoarthritis.  (Tr.

657, 659.)  While Evans also exhibited some limited range of motion, diffuse

tenderness, abnormal tandem gait, and intermittent weakness and spasm during the

relevant period (*see* Tr. 502, 510, 552-53, 710, 721, 727), none was at a level

supporting the degree of limitations expressed in Dr. LaGuardia's MSS.

Regardless, it is the ALJ's duty to resolve conflicts in the evidence, including

medical evidence, and I may not substitute my opinion for the ALJ's.  *Phillips v. Colvin*, 721 F.3d 623, 629 (8th Cir. 2013); *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007).

In sum, the extreme limitations set out in Dr. LaGuardia's MSS are inconsistent with substantial medical evidence of record.  Therefore, the ALJ did not err in according little weight to the MSS for this reason.  *See Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016) (opinions of treating physicians may be given limited weight if they are inconsistent with the record) (citing *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015)).  *See also Martise*, 641 F.3d at 925 ("[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight.") (internal quotation marks and citation omitted).

The ALJ's determination to accord little weight to Dr. LaGuardia's MSS opinions because of inconsistency with his own treatment notes and with other substantial evidence of record is supported by substantial evidence on the record as a whole, and the ALJ did not err in this determination.  *Goff*, 421 F.3d at 790-91. Because these reasons constitute good reasons and are sufficient in themselves to discount the MSS, I do not need to determine whether the ALJ erred in finding that the opined limitations were based upon Evans' subjective complaints or whether

the ALJ's misstatement regarding Dr. LaGuardia's review of MRI images[7] affected the decision.  *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (declining to remand for alleged error in opinion when error had no bearing on the outcome).

> 2.   *Medical Evidence Supporting the RFC Determination*

Evans argues that with the ALJ discounting Dr. LaGuardia's opinion evidence, there was no medical evidence of record from which the ALJ could adequately assess her RFC.  According limited weight to *opinion* evidence, however, does not render the record devoid of substantial evidence to support an ALJ's RFC determination where, as here, other medical evidence supports the RFC findings.  *See Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007); *see also Zeiler v. Barnhart,* 384 F.3d 932, 936 (8th Cir. 2004) (lack of opinion evidence not fatal to RFC determination where ALJ properly considered available medical and testimonial evidence); *Sampson v. Apfel,* 165 F.3d 616 (8th Cir. 1999) (although ALJ discounted the only opinion evidence of record, a review of the entirety of the medical record provided substantial evidence on the record as a whole to support ALJ's decision).  As described above, there existed substantial medical and other evidence in the record upon which the ALJ based her RFC determination, even with the little weight accorded to Dr. LaGuardia's opinion.

To the extent Evans contends that her daily activities and the opinion of a

---

[7] *See* n.4.

State agency consultant do not constitute the necessary medical evidence to support an RFC determination, the ALJ did not rely only on this evidence to assess Evans' RFC. Instead, the ALJ thoroughly addressed all the medical evidence of record and identified how such evidence supported the specific RFC limitations. As detailed by the ALJ throughout her decision, there was substantial medical and other evidence of record supporting her conclusion that Evans had the RFC to perform light work with additional and significant restrictions. I cannot reverse the decision even if substantial evidence may support a different outcome. *Cox,* 495 F.3d at 619.

## Conclusion

When reviewing an adverse decision by the Commissioner, my task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* For the reasons set out above on the claims raised by Evans on this appeal, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination. Because substantial evidence on the record as a whole supports the ALJ's decision, the decision must be affirmed. *Id.*

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed, and Kacy Evans' complaint is dismissed with prejudice.

A separate Judgment is entered herewith.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 15th day of July, 2020.